## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TEXARKANA DIVISION

| | |
|---|---|
| PANTECH CORPORATION <br><br>                Plaintiff, <br><br> v. <br><br> LENOVO GROUP LTD. <br><br>                Defendant, | Case No. <br><br> **JURY TRIAL DEMANDED** |

### COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Pantech Corporation ("Pantech" or "Plaintiff"), for its Complaint against Lenovo Group Ltd., ("Lenovo" or "Defendant"), alleges the following:

### NATURE OF THE ACTION

1.      This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. § 1, *et seq.*

### THE PARTIES

2.      Pantech Corp. is an entity organized under the laws of South Korea, with a place of business at 13 Saimdang-ro 8-gil, Suite 402-J420, Seocho-gu, Seoul 06735, Republic of Korea.

3.      Defendant Lenovo Group Ltd. is a corporation organized and existing under the laws of China, with its principal place of business located at No. 6 Chuang Ye Road, Haidian District, Shangdi Information Industry Base, Beijing, 100085, China. On information and belief, Lenovo manufactures, imports, sells for importation, offers for sale, and/or sells within the United States the Lenovo Accused Products. Specifically, Defendant provides and makes available for sale wireless telecommunications equipment, including smartphones and mobile devices.

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because the action arises under the patent laws of the United States, 35 U.S.C. § 271, *et seq*., and/or pursuant to 28 U.S.C. § 1367(a) as to Plaintiff's claims for breach of FRAND obligations and unjust enrichment (Counts IX and X) because these claims are inextricably related to Plaintiff's claims for patent infringement (Counts I-VIII).

5.     This Court has personal jurisdiction over Lenovo. Lenovo has continuous and systematic business contacts with the State of Texas and has committed and continues to commit acts of patent infringement in the United States, including in the State of Texas, by making, using, offering to sell, and/or selling accused products in the United States and Texas, and/or importing accused products into the United States and Texas. In addition, Lenovo conducts its business extensively throughout Texas and derives substantial revenue in Texas, by shipping, distributing, offering for sale, selling, and advertising (including through an interactive web page) its products and/or services in the State of Texas and the Eastern District of Texas. Lenovo has purposefully and voluntarily placed in the stream of commerce one or more products and/or services that practice the Asserted Patents (as set forth below) with the intention and expectation that they will be purchased and used by consumers in the Eastern District of Texas. For example, Lenovo advertises its products (including those accused in this Complaint) for purchase on its webpage, accessible     from     the     United     States,     including     Texas,     such     as     at https://www.Lenovo.com/ie/en/phones?orgRef=https%253A%252F%252Fwww.google.com%2 52F&srsltid=AfmBOor-eUq8K_1veegg13maAWGQ5eeVmtmQY56CRfkSUXarUbYoPLOW; https://www.Lenovo.com/us/en/tablets/.  Further,  https://www.Lenovo.com/ie/en?Redirect=False includes a user agreement (https://www.Lenovo.com/ie/en/privacy/) that imposes terms between users and "Lenovo Group Ltd. (referred to as we, us or Lenovo)." Certain of its products (including

its Motorola series cell phones) are also available for purchase from Amazon (https://www.amazon.com/Lenovo-Smartphones/s?k=Lenovo+Smartphones) and Best Buy (https://www.bestbuy.com/site/searchpage.jsp?browsedCategory=pcmcat1625163553254&id=pc at17071&qp=brand_facet%3DBrand%7EMotorola&st=pcmcat1625163553254_categoryid%24a bcat0800000).

6.      On information and belief, the Lenovo products accused in this Complaint are and have been sold in physical Best Buy retail stores located within the State of Texas and the Eastern District of Texas, for example, at 5514 S Broadway Ave, Tyler, TX 75703; 4210 St Michael Dr, Texarkana, TX 75503; and 422 W Loop 281 STE 100, Longview, TX 75605.

7.      In addition, or in the alternative, this Court has personal jurisdiction over Defendant pursuant to Fed. R. Civ. P. 4(k)(2).

8.      Venue is proper in this district as to Defendant, which is organized under the laws of China. 28 U.S.C. § 1391(c)(3) provides that "a defendant not resident in the United States may be sued in any judicial district, and the joinder of such a defendant shall be disregarded in determining where the action may be brought with respect to other defendants."

## ACCUSED INSTRUMENTALITIES

9.      Lenovo makes, uses, sells and offers for sale, provides, and causes to be used, now and within the past six years, mobile phones (e.g., Motorola series) and certain other LTE, LTE-A, and 5G-capable devices (the "Accused Instrumentalities").

10.      For example, Lenovo advertises that the Motorola razr 50, motorola razr ultra 2025, motorola razr 2025, motorola razr+, motorola razr 2024, motorola razr 2023, motorola razr+ 2023, moto g stylus 2025, moto g power – 2025, moto g – 2025, moto g stylus 5G – 2024, moto g 5G – 2024, moto g power 5G – 2024, moto g play – 2024, motorola edge – 2024, motorola edge+ - 2023, Lenovo Tab K11 LTE, Lenovo ThinkPad P16s Gen 3 Intel (16") Mobile Workstation, Lenovo

ThinkPad P16v Gen 2 Intel (16") Mobile Workstation, Lenovo ThinkPad X1 Fold Intel (16")
(collectively, the "Lenovo Accused Instrumentalities") devices are compliant with LTE, LTE-A,
and/or 5G cellular network standards.

## PATENTS-IN-SUIT

11.     The Asserted Patents are U.S. Patent Nos. 9,548,839; 11,659,503; 11,051,344; and
12,267,876.

12.     U.S. Patent No. 9,548,839 (the "'839 Patent") is entitled "Method for mapping
physical hybrid automatic repeat request indicator channel." On May 7, 2020, Pantech Corp.
obtained full and complete ownership, title, and interest in the '839 Patent.[1]

13.     U.S. Patent No. 11,659,503 (the "'503 Patent") is entitled "Apparatus and method
for establishing uplink synchronization in a wireless communication system." On May 7, 2020,
Pantech Corp. obtained full and complete ownership, title, and interest in the '503 Patent.[2]

14.     U.S. Patent No. 11,051,344 (the "'344 Patent") is entitled "Method for transmitting
and receiving random access request and transmitting and receiving random access response." On
May 7, 2020, Pantech Corp. obtained full and complete ownership, title, and interest in the '503
Patent.[3]

---

[1] The named inventors of the '839 Patent are Jung Hoon Lee and Joon Kui Ahn. The U.S. patent application was filed
on  May 29, 2015, published on  September 17, 2015, and the '839 Patent issued on  January 17, 2017. The inventors
assigned a parent application, U.S. Patent App. No. 12/388,243 and any continuations thereto, including the
application underlying the '839 Patent, to LG Electronics Inc. On February 15, 2012, LG Electronics Inc. transferred
its interest to Pantech Co. Ltd. On July 6, 2016, Pantech Co., Ltd assigned its interest to Pantech Inc. On October 31,
2016, Pantech Inc. transferred the interest to Goldpeak Innovations Inc. On May 7, 2020, Goldpeak Innovations Inc.
transferred the interest to Pantech Corp.

[2] The named inventors of the '503 Patent are Kibum Kwon and Myungcheul Jung. The U.S. patent application was
filed on May 17, 2021, published on September 2, 2021, and the '503 Patent issued on May 23, 2023. The inventors
assigned a parent application, U.S. Patent App. 13/578,531 and any continuations thereto, including the application
underlying the '839 Patent, to Pantech Co., Ltd. On July 6, 2016, Pantech Co., Ltd assigned its interest to Pantech
Inc. On October 31, 2016, Pantech Inc. transferred the interest to Goldpeak Innovations Inc. On May 7, 2020,
Goldpeak Innovations Inc. transferred the interest to Pantech Corp.

[3] The named inventors of the '344 Patent are Min Seok Noh, Yeong Hyeon Kwon, Jin Sam Kwak, Dong Cheol Kim,
Sung Ho Moon, Seung Hee Han, Hyun Woo Lee, and Dragan Vujcic. The U.S. patent application was filed on

15.    U.S. Patent No. 12,267,876 (the "'876 Patent") is entitled "Method for transmitting and receiving random access request and transmitting and receiving random access response." On May 7, 2020, Pantech Corp. obtained full and complete ownership, title, and interest in the '876 Patent.[4]

16.    Pantech Corp. is the rightful owner of the '839, '503, '344, and '876, and holds the entire right, title and interest in the '839, '503, '344, and '876, including the right to collect for past damages.

## BACKGROUND

## Pantech Corp.

17.    Pantech Co., Ltd., the predecessor to what is now Pantech Corp.,[5] was originally founded in 1991 in Seoul, South Korea as a competitor in the wireless phone marketplace.

18.    Throughout the 1990s and 2000s, Pantech rose to become a leading manufacturer of mobile phones. By 2012, Pantech had become the second best-selling Korean handset maker.

---

December 11, 2019, published on April 16, 2020, and the '344 Patent issued on June 29, 2021. The inventors assigned a parent application, U.S. Patent App. No. 12/347,352 and any continuations thereto, including the application underlying the '344 Patent, to LG Electronics Inc. On February 15, 2012, LG Electronics Inc. assigned its interest to Pantech Co., Ltd. On July 6, 2016, Pantech Co., Ltd. Assigned its interest to Pantech Inc. On October 31, 2016, Pantech Inc. assigned its interest to Goldpeak Innovations Inc. On May 7, 2020, Goldpeak Innovations Inc. transferred the interest to Pantech Corp.

[4] The named inventors of the '876 Patent are Min Seok Noh, Yeong Hyeon Kwon, Jin Sam Kwak, Dong Cheol Kim, Sung Ho Moon, Seung Hee Han, Hyun Woo Lee, and Dragan Vujcic. The U.S. patent application was filed on September 22, 2023, published on January 11, 2024, and the '876 patent issued on April 1, 2025. The inventors assigned a parent application, U.S. Patent App. No. 12/347,352 and any continuations thereto, including the application underlying the '876 Patent, to LG Electronics Inc. On February 15, 2012, LG Electronics Inc. assigned its interest to Pantech Co., Ltd. On July 6, 2016, Pantech Co., Ltd. Assigned its interest to Pantech Inc. On October 31, 2016, Pantech Inc. assigned its interest to Goldpeak Innovations Inc. On May 7, 2020, Goldpeak Innovations Inc. transferred the interest to Pantech Corp.

[5] Pantech Co., Ltd. was formed in 1991, and as the result of a restructuring and acquisition in 2015 became Pantech, Inc. Thereafter, Pantech Corporation was formed. Pantech, Inc. transferred its assets to Pantech Corp. as part of an asset sale in 2020 (in this section, these three entities are hereinafter referred to collectively as "Pantech" unless otherwise identified).

19.     Pantech's products were sold in South Korea, the United States, Japan, China, Europe, Vietnam, and other countries around the world. Pantech launched operations in the United States in 2003.

20.     Pantech's portfolio of intellectual property is broad and extensive, comprising thousands of worldwide patents and patent applications in the areas of telecommunications, "smart" devices, and Internet of Things products. Pantech's portfolio, in one aspect, covers wireless communication systems and devices and methods for using those communication systems. In the wireless technology space alone, Pantech holds more than 200 U.S. patents and applications, many of which have been declared standard essential patents.

21.     Pantech has invested heavily in research and development, investing, on average, over 10% of its annual revenue in research and development. Pantech's research and development efforts in network technology include, but are not limited to, technologies focused on LTE, LTE-A, and 5G networks, WCDMA/CDMA, WiMAX, WiFi, Near Field Communication (NFC), Visible Light Communication, Human Body Communication, Ultra-Wideband Communication LTE and IP Mesh Network.

22.     Over the last decade, Pantech has enthusiastically contributed to the 3rd Generation Partnership Project (3GPP) LTE/LTE-A standardization by submitting proposals to TSG RAN, RAN1, and RAN2. Indeed, Pantech secured numerous LTE/LTE-A Standard Essential Patents and patent applications (SEPs) in connection with its contributions. In 2014, National Applied Research Labs in Taiwan reported that Pantech held 1% of LTE-related SEPs, and that number has only increased since 2014.

23.     Recognizing the value of its own portfolio and its potential role in the Fourth Industrial Revolution, Pantech has committed to making its intellectual property available in the

marketplace, including to competitors. On its website, under the heading "IP Umbrella Services," Pantech offers to exchange intellectual property and technology, and collaborate with competitors and patent holders, through licenses, to enable the market to identify new technological ventures.

24.     Pantech Corp. is the owner by assignment of a portfolio of patents, including the Asserted Patents described in paragraphs 11-16 and in detail in the counts below, that relate to mobile device user interface features and technology for cellular communications networks, including variations or generations of cellular communication network technology such as, but not limited to LTE, LTE-A, and 5G, as discussed herein.

### Negotiations Between the Parties

25.     Cellular communication network technology is used to provide data transmission across mobile cellular networks.

26.     It is critical for cellular communication network technology to be standardized around the globe. Independent standard-setting organizations, like the European Telecommunications Standards Institute (ETSI), establish global standards for the telecommunication industries. ETSI, along with other standard-setting organizations, have made it possible to have global interoperability between networks, devices and network operators.

27.     ETSI sets forth a policy in order to balance intellectual property protections against the need for an open standard by designating certain intellectual property rights (IPR) as "essential." ETSI sets forth the following definition of "essential":

> "ESSENTIAL" as applied to IPR means that it is not possible on technical (but not commercial) grounds, taking into account normal technical practice and the state of the art generally available at the time of standardization, to make, sell, lease, otherwise dispose of, repair, use or operate EQUIPMENT or METHODS which comply with a STANDARD without infringing that IPR. For the avoidance of doubt in exceptional cases where a STANDARD can only be implemented by technical solutions, all of which are infringements of IPRs, all such IPRs shall be considered ESSENTIAL.

Clause 15.6 of the ETSI IPR Policy, https://www.etsi.org/images/files/IPR/etsi-ipr-policy.pdf.

28.     Lenovo is required to have a license to one or more essential patents owned by Pantech Corp. including the Asserted Patents that are identified as essential.

29.     Pantech and its predecessor entities have made repeated and sustained efforts to notify Lenovo and its related entities of the existence, essentiality, and infringement of the Asserted Patents:

30.     **Initial Outreach by Predecessor:** On March 22, 2018, Goldpeak Innovations, Inc. (Pantech Corp.'s predecessor in ownership of the Asserted Patents or their family members) sent a letter to Mr. Thomas V. Miller, VP, Intellectual Property of Motorola Mobility, LLC, offering to license patents owned and/or managed by Goldpeak and Pantech Inc., including those essential to cellular standards such as LTE and LTE-Advanced. This correspondence identified Lenovo products (including Moto E 2015, Moto G LTE, DROID Turbo, Moto X, DROID MAXX, DROID Mini, ELECTRIFY M, DROID RAZR HD, DROID RAZR MAXX HD, DROID RAZR M, PHOTON Q 4G LTE, and Moto Z Force 4G LTE) as being covered by the claims of the offered patents, and attached a list of Pantech's patents, specifically identifying the '839 Patent as being infringed by the identified Lenovo products and related products. On information and belief, Lenovo did not accept Goldpeak's offer to negotiate a license to the patents.

31.     **Follow-Up by Pantech:** After acquiring the patents from Goldpeak and Pantech Inc., Pantech sent a follow-up letter to Lenovo on June 12, 2020, addressed to Mr. Yuanqing Yang (CEO of Lenovo (Beijing) Ltd.), Ms. Laura Quatela (Chief Legal Officer of Lenovo (United States), Inc.), and Mr. Sergio Buniac (President of Motorola Mobility LLC). This letter

notified Lenovo of Pantech's acquisition of the patents, provided a list of the patents, identified

exemplary patents (including the '839 Patent) as being infringed by Lenovo, and listed numerous

Lenovo and Motorola products that infringe.

32.    **Ongoing Communications:** Pantech continued to provide additional details

regarding its portfolio and licensing proposal to Lenovo on at least January 8, 2021, April 7,

2021, and May 28, 2021. These communications included technical details, lists of patents,

identification of the Asserted Patents (or family members with the same specification and claim

scope), and references to the relevant portions of the cellular standards covered by the respective

patents.

33.    **Notice of Standards Essentiality:** In these communications, Pantech specifically

called attention to the standards-essential nature of the Asserted Patents, referencing the relevant

3GPP standards that are implemented in Lenovo's products.

34.    **Notice of Additional Portfolio:** During negotiations, on April 7, 2021, and May

28, 2021, Pantech provided Lenovo with notice that its subsidiary, Pantech Wireless LLC, had

acquired the Signal Trust portfolio of patents, which included additional standard essential

patents, and provided a list of the acquired patents. In the May 28, 2021, correspondence and

subsequent discussions, Pantech provided Lenovo with detailed claim charts and made a

licensing offer that included both the Pantech and Pantech Wireless patents, at a rate reflecting a

substantial discount.

35.    **Lack of Good Faith Engagement:** Despite multiple efforts to engage with

Lenovo, Pantech was met with constant delay, ignored communications, and prolonged periods

for responses. Even after technical presentations and promises of feedback, Lenovo never

substantively responded to Pantech's offer or provided a counteroffer. Following years of silence, Pantech sent another letter to Lenovo on January 2, 2025, highlighting recent developments and licensing activity, which Lenovo ignored.

36. **Constructive Knowledge:** As a major participant in the global telecommunications market and a member of standard-setting organizations, Lenovo has constructive knowledge of the Asserted Patents by virtue of their declaration as SEPs and their inclusion in public standards documentation.

## COUNT I – INFRINGEMENT OF U.S. PATENT NO. 9,548,839

37. The allegations set forth in the foregoing paragraphs 1 through 36 are incorporated into this claim for relief.

38. On January 17, 2017, the '839 Patent, entitled "Method for mapping physical hybrid automatic repeat request indicator channel," was duly and legally issued by the United States Patent and Trademark Office from U.S. Patent Application No. 14/726,014, filed on May, 29, 2015. The '839 Patent claims foreign priority to KR 10-2008-0124084, filed on December 8, 2008. A true and correct copy of the '839 Patent is attached as Exhibit 1.

39. Pantech is the assignee and owner of all right, title and interest in and to the '839 Patent, including the right to assert all causes of action arising under said patent and the right to any remedies for its infringement.

40. The '839 Patent provides critical improvements that allow user equipment (UE) devices to process signals from base stations indicating whether the base station successfully received transmissions from the phone (uplink transmissions). More specifically, the '839 Patent discloses at least apparatuses and methods for mapping a physical hybrid automatic repeat request indicator channel (PHICH) to at least one orthogonal frequency division multiplexing (OFDM)

symbol. Indices of resource element groups in which the PHICH is transmitted are determined according to a ratio involving the number of available resource element groups in the OFDM symbol.

41.    For example, claims 9-12 of the '839 Patent recite elements of PHICH mapping mandated by the LTE standard, including at least 3GPP TS 36.211, TS 36.213, and TS 36.331. *See* 3GPP TS 36.211 v8.9.0 at 48-49, 61-65 (§§ 3.1, 6.2.4, 6.9.1, 6.9.3) (OFDM symbols comprise a plurality of resource element groups, mapping PHICH to OFDM symbols; determination of resource element group indexes); 3GPP TS 36.213 v8.8.0 at 65-66 (§ 9.1.2) (UE determination of PHICH resource); and 3GPP TS 36.331 v8.7.0 at 24, 25, 84, 85, 103, 119, 125 (§§ 5.2.2.6, 5.2.2.9, 6.2.2, 6.3.1, 6.3.2) (UE determination of indexes).

42.    Upon information and belief, Lenovo and/or its subsidiaries or business partners has and continues to directly infringe at least claims 9-12 of the '839 Patent by making, using, selling, importing, offering to sell within the United States, importing into the United States, and providing to and within the United States, Accused Instrumentalities that practice at least claims 9-12 of the '839 Patent (the "Lenovo Accused '839 Instrumentalities"). Lenovo also has and continues to directly infringe at least claims 9-12 by practicing claims 9-12 through the Lenovo Accused '839 Instrumentalities, and by causing the Lenovo Accused '839 Instrumentalities to practice the patented inventions.

43.    The Lenovo Accused '839 Instrumentalities include, for example, the Motorola razr 50 and other LTE, LTE-A, and 5G compatible devices that constitute/support the apparatuses and methods for mapping a physical hybrid automatic repeat request indicator channel (PHICH) to at least one orthogonal frequency division multiplexing (OFDM) symbol. On information and belief, each of the Lenovo Accused '839 Instrumentalities incorporates a chipset, application processor,

SoC, or system-on-chip (e.g., Qualcomm Snapdragon 8 Elite Mobile Platform chipset) (referred to herein as the "chipset") that incorporates a processor and/or modem. Each such chipset (and thus each infringing device) complies with one or more of LTE cellular communication protocols including at least 3GPP TS 36.211, 3GPP TS 36.331, and/or 3GPP TS 36.213.

44.    Pantech made Lenovo aware of the '839 Patent and its infringement thereof at least as early as June 12, 2020, when Pantech explicitly identified the '839 Patent in correspondence sent to Lenovo.

45.    Since at least June 12, 2020, when Lenovo made Pantech aware of the '839 Patent, Lenovo's infringement has been, and continues to be willful.

46.    Upon information and belief, the Lenovo Accused '839 Instrumentalities are used, marketed, provided to, and/or used by or for Lenovo's partners, clients, customers/subscribers and end users across the country and in this district.

47.    Upon information and belief, Lenovo has induced and continues to induce others to infringe at least claims 9-12 of the '839 Patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including, but not limited to Lenovo's partners, clients, customers/subscribers, and end users, whose use of the Lenovo Accused '839 Instrumentalities constitute direct infringement of at least one claim of the '839 Patent. For example, Lenovo advertises and has advertised the use of its devices for LTE, LTE-A, and 5G communications. *See* https://www.lenovo.com/ie/en/p/phones/moto/motorola-razr-series/pmipmgu37my/pb200016gb#tech_specs.

48.    In particular, Lenovo's actions that aid and abet others such as its partners, customers/subscribers, clients, and end users to infringe include advertising and distributing the

Lenovo Accused '839 Instrumentalities, and providing instruction materials, training and services regarding the Lenovo Accused '839 Instrumentalities.

49.     Any party, including Lenovo's partners, clients, customers/subscribers, and end users, using the Lenovo Accused '839 Instrumentalities necessarily infringes the '839 Patent because the inventions of the '839 Patent are required to comply with the relevant cellular standards. Lenovo advertises its Lenovo Accused '839 Instrumentalities as compliant with LTE, LTE-A, and 5G, which induces others to infringe the '839 Patent. Lenovo has knowingly induced infringement since at least as early as June 12, 2020, when Lenovo was made aware of the '839 Patent.

50.     Upon information and belief, Lenovo is liable as a contributory infringer of the '839 Patent under 35 U.S.C. § 271(c) by offering to sell, selling and importing into the United States the Lenovo Accused '839 Instrumentalities that infringe the patented inventions, to be especially made or adapted for use in an infringement of the '839 Patent. Each of the Lenovo Accused '839 Instrumentalities is a material component for use in practicing the '839 Patent and is specifically made and not a staple article of commerce suitable for substantial non-infringing use. In particular, each of the Lenovo Accused '839 Instrumentalities is advertised to be compliant with the relevant standards and primarily used in compliance with such standards.

51.     Pantech has been harmed by Lenovo's infringing activities.

### COUNT II – INFRINGEMENT OF U.S. PATENT NO. 11,659,503

52.     The allegations set forth in the foregoing paragraphs 1 through 51 are incorporated into this claim for relief.

53.     On May 23, 2023, the '503 Patent, entitled " Apparatus and method for establishing uplink synchronization in a wireless communication system" was duly and legally issued by the United States Patent and Trademark Office from U.S. Patent Application No. 17/322,832, filed on

May 17, 2021. The '503 Patent claims priority to The '503 Patent claims priority to the following foreign patents: KR 10-2010-0012564, filed on February 10, 2010, KR 10-2010-0027230, filed on March 26, 2010, and KR 10-2011-0008683, filed on January 28, 2011. A true and correct copy of the '503 Patent is attached as Exhibit 2.

54.    Pantech is the assignee and owner of all right, title and interest in and to the '503 Patent, including the right to assert all causes of action arising under said patent and the right to any remedies for infringement of it.

55.    The '503 Patent provides improvements for uplink synchronization in telecommunications networks that use carrier aggregation. This is critical because uplink transmissions (transmissions from a phone to a base station) must be synchronized so that they arrive at the base station at the same time. More specifically, the '503 Patent discloses at least apparatuses and methods for establishing uplink synchronization in a wireless communication system supporting primary and secondary component carriers ("CCs"), through the use of timing groups. For instance, a user equipment, contains a processor configured to cause the apparatus to receive, through a primary CC belonging to a first uplink timing group, a Radio Resource Control (RRC) message comprising information related to a second uplink timing group, receive information indicating a random access preamble (RAP), transmit a RAP through one or more uplink CCs, each being set as a delegate CC for a respective second uplink timing group, and receive a random access response (RAR) including a timing advance (TA) value based on the RAP associated with the delegate CC or the respective second uplink timing group, together with uplink grant information. The processor is also configured to cause the UE to apply each TA value to the secondary CC for the respective second uplink timing group. For example, claims 5, 7, and 8 of the '503 Patent recite elements of uplink resource control mandated by at least the LTE/LTE-A

standard, including at least the following 3GPP technical specifications: TS 36.321, and 36.331. Compliance with these technical specifications, and thus with at least the LTE/LTE-A standard, requires the use of the invention recited in at least claims 5, 7, and 8 of the '503 Patent, including the functionality described in this paragraph.

56.    Upon information and belief, Lenovo and/or its subsidiaries or business partners has and continues to directly infringe at least claims 5, 7, and 8 of the '503 Patent by making, using, selling, importing, offering to sell within the United States, importing into the United States, and providing to and within the United States, Accused Instrumentalities that practice at least claims 5, 7, and 8 of the '503 Patent (the "Lenovo Accused '503 Instrumentalities"). Lenovo also has and continues to directly infringe at least claims 5, 7, and 8 by practicing claims 5, 7, and 8 through the Lenovo Accused '503 Instrumentalities, and by causing the Lenovo Accused '503 Instrumentalities to practice the patented inventions.

57.    The Lenovo Accused '503 Instrumentalities include, for example, the Motorola razr 50 and other LTE-A compatible products that support carrier aggregation functionally mandated by the LTE-A standard. Further, each of the Lenovo Accused '503 Instrumentalities contains a chipset, application processor, SoC, or system-on-chip (e.g., Qualcomm Snapdragon 8 Elite Mobile Platform) (referred to herein as the "chipset") that incorporates a processor and modem. Each such chipset (and thus each accused device) complies with one or more of LTE Advanced, Release 11 or higher cellular communication standard, including at least 3GPP TS 36.300, 3GPP TS 36.321, 3GPP TS 36.213, 3GPP TS 36.211, and/or 3GPP TS 36.331, and supports Radio Resource Control (RRC), random access, and timing advance mechanisms in accordance with the LTE Release 11 or later cellular communication standard. Furthermore, each of the Accused Lenovo '503 LTE-A Instrumentalities contains an antenna or antennas, memory, and transceiver

or combination of transmitter and receiver that assist the processor with the RRC, random access, and timing advance mechanisms in accordance with the LTE Release 11 or later cellular communication standard

58.    The Lenovo Accused '503 Instrumentalities also include, for example, the Motorola razr 50 and other 5G compatible products mandated by the 5G standard, Release 16 and higher (i.e., with 3GPP TS 37.340, 3GPP TS 38.300, 3GPP TS 38.321, 3GPP TS 38.213, 3GPP TS 38.211, and/or 3GPP TS 38.331, and, to the extent relied upon below, the LTE cellular communication standard described in 3GPP TS 36.300, 3GPP TS 36.321, 3GPP TS 36.213, 3GPP TS 36.211, and/or 3GPP TS 36.331). On information and belief, each of the Lenovo Accused '839 Instrumentalities contains a chipset, application processor, SoC, or system-on-chip (e.g., Qualcomm Snapdragon 8 Elite Mobile Platform) (referred to herein as the "chipset") that incorporates a processor and modem. Each such chipset (and thus each accused device) complies with the 5G Release 16 or higher cellular communication standard, including at least 3GPP TS 37.340, 3GPP TS 38.300, 3GPP TS 38.321, 3GPP TS 38.213, 3GPP TS 38.211, and/or 3GPP TS 38.331, and supports Radio Resource Control (RRC), random access, and timing advance mechanisms in accordance with the 5G Release 16 or later cellular communication standards. Each such chipset also complies with the LTE Release 16 or higher cellular communication standard, including at least 3GPP TS 36.300, 3GPP TS 36.321, 3GPP TS 36.213, 3GPP TS 36.211, and/or 3GPP TS 36.331. Further, each of the Accused Lenovo '503 5G Instrumentalities contains an antenna or antennas, memory, and transceiver or combination of transmitter and receiver that assist the processor with the RRC, random access, and timing advance mechanisms in accordance with the 5G and LTE Release 16 or later cellular communication standards.

59.     Pantech made Lenovo aware of the '503 Patent family and its infringement thereof at least as early as June 12, 2020, when Pantech explicitly identified '503 Patent family members in correspondence sent to Lenovo.

60.     Since the issuance of the '503 Patent, Lenovo's infringement has been, and continues to be, willful based on at least the fact that Pantech made Lenovo aware of the '503 Patent's family members on June 12, 2020.

61.     Upon information and belief, the Lenovo Accused '503 Instrumentalities are used, marketed, provided to, and/or used by or for Lenovo's partners, clients, customers/subscribers and end users across the country and in this district.

62.     Upon information and belief, Lenovo has induced and continues to induce others to infringe at least claims 5, 7, and 8 of the '503 Patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including, but not limited to Lenovo's partners, clients, customers/subscribers, and end users, whose use of the Lenovo Accused '503 Instrumentalities constitute direct infringement of at least one claim of the '503 Patent. For example, Lenovo advertises and has advertised the use of its devices for LTE-A and 5G communications. *See* https://www.Lenovo.com/en_us/Lenovo-razr 50/specs?sku=HQ502000461Q0.

63.     In particular, Lenovo's actions that aid and abet others such as its partners, customers/subscribers, clients, and end users to infringe include advertising and distributing the Lenovo Accused '503 Instrumentalities, and providing instruction materials, training and services regarding the Lenovo Accused '503 Instrumentalities.

64.     Any party, including Lenovo's partners, clients, customers/subscribers, and end users, using the Lenovo Accused '503 Instrumentalities necessarily infringes the '503 Patent

because the inventions of the '503 Patent are required to comply with the relevant cellular standards. Lenovo advertises its Lenovo Accused '503 Instrumentalities as compliant with LTE-A and 5G, which induces others to infringe the '503 Patent. Lenovo has knowingly induced infringement since at least as early as the filing date of this Complaint, when Lenovo was made aware of the '503 Patent.

65.     Upon information and belief, Lenovo is liable as a contributory infringer of the '503 Patent under 35 U.S.C. § 271(c) by offering to sell, selling and importing into the United States the Lenovo Accused '503 Instrumentalities that infringe the patented inventions, to be especially made or adapted for use in an infringement of the '503 Patent. Each of the Lenovo Accused '503 Instrumentalities is a material component for use in practicing the '503 Patent and is specifically made and not a staple article of commerce suitable for substantial non-infringing use. In particular, each of the Lenovo Accused '503 Instrumentalities is advertised to be compliant with the relevant standards and primarily used in compliance with such standards.

66.     Pantech has been harmed by Lenovo's infringing activities.

## COUNT III – INFRINGEMENT OF U.S. PATENT NO. 11,051,344

67.     The allegations set forth in the foregoing paragraphs 1 through 66 are incorporated into this claim for relief.

68.     On June 29, 2021, U.S. Patent No. 11,051,344, entitled "Method for transmitting and receiving random access request and transmitting and receiving random access response" was duly and legally issued by the United States Patent and Trademark Office from U.S. Patent Application No. 16/711,269. Through a series of continuation applications, the '344 Patent claims priority to KR 10-2008-0047656, filed May 22, 2008, and U.S. Provisional App. No. 61/018,492, filed January 1, 2008. A true and correct copy of the '344 Patent is attached as Exhibit 3.

69.     Pantech is the assignee and owner of all right, title and interest in and to the '344 Patent, including the right to assert all causes of action arising under said patent and the right to any remedies for infringement of it.

70.     The '344 Patent discloses at least apparatuses and methods to receive a random access response from a base station within a time period starting at a time point after an end time of transmitting the random access preamble obtained by adding an offset to a subframe number corresponding to the end time of transmitting the random access preamble and the offset equals three and extract information associated with a subframe number of a subframe in which a random access preamble was transmitted by the user equipment and determine that the received random access response is a response to the transmitted random access preamble. For example, claims 2 and 6 of the '344 Patent recite elements of random access procedures mandated by the LTE standard, including at least 3GPP TS 36.300, TS 36.321, TS and TS 36.331 release 8 and higher. *See* 3GPP 36.321 v8.5.0 at 12-13 (§ 5.1.1, 5.1.2), 14 (§§ 5.1.3, 5.1.4) (the UE performs a random access procedure, including transmitting a RAP, monitoring for a RAR within a RA response window, and receives a RAR); 3GPP TS 36.300 v8.5.0 at 50 (§ 10.1.5.1) (the UE receives a RAR); 3GPP TS 36.321 v8.5.0 at 35-36 (§ 6.1.5); 3GPP TS 36.321 v8.5.0 at 37-38. (§ 6.2.2); 3GPP TS 36.213 v8.5.0 at 16-17 (§ 6.1); 3GPP TS 36.331 v8.5.0 at 123-124 (§ 5.1.1).

71.     Upon information and belief, Lenovo and/or its subsidiaries or business partners has and continues to directly infringe at least claims 2 and 6 of the '344 Patent by making, using, selling, importing, offering to sell within the United States, importing into the United States, and providing to and within the United States, Accused Instrumentalities that practice at least claims 2 and 6 of the '344 Patent (the "Lenovo Accused '344 Instrumentalities"). Lenovo also has and continues to directly infringe at least claims 2 and 6 by practicing claims 2 and 6 through the

Lenovo Accused '344 Instrumentalities, and by causing the Lenovo Accused '344 Instrumentalities to practice the patented inventions.

72.    Lenovo Accused '344 Instrumentalities include, for example, the Motorola razr 50 smartphone and other products that are compatible with the LTE cellular communication standard, Release 8 or higher, and specifically with 3GPP TS 36.300, 3GPP TS 36.321, 3GPP TS 36.331, and/or 3GPP TS 36.213. On information and belief, each of the Lenovo Accused '344 Instrumentalities contains a chipset, application processor, SoC, or system-on-chip (e.g., Qualcomm Snapdragon 8 Elite Mobile Platform) (referred to herein as the "chipset") that incorporates a processor and modem. Each such chipset (and thus each accused device) complies with one or more of the LTE Release 8 or higher cellular communication protocols, including at least 3GPP TS 36.300, 3GPP TS 36.321, 3GPP TS 36.331, 3GPP TS 36.213, and/or 3GPP TS 36.331, and supports Radio Resource Control (RRC), random access, and timing advance mechanisms in accordance with the LTE Release 8 or higher cellular communication standards. Further, each of the Accused '344 Instrumentalities contains an antenna or antennas, memory, and transceiver or combination of transmitter and receiver that assist the processor with the RRC, random access, and timing advance mechanisms in accordance with the LTE Release 8 or later cellular communication standards.

73.    Pantech made Lenovo aware of the '344 Patent family and its infringement thereof at least as early as June 12, 2020, when Pantech explicitly identified '344 Patent family members in correspondence sent to Lenovo.

74.    Since the issuance of the '344 Patent, Lenovo's infringement has been, and continues to be, willful based on at least the fact that Pantech made Lenovo aware of the '344 Patent's family members on June 12, 2020.

75.     Upon information and belief, the Lenovo Accused '344 Instrumentalities are used, marketed, provided to, and/or used by or for Lenovo's partners, clients, customers/subscribers and end users across the country and in this district.

76.     Upon information and belief, Lenovo has induced and continues to induce others to infringe at least claims 2 and 6 of the '344 Patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including, but not limited to Lenovo's partners, clients, customers/subscribers, and end users, whose use of the Lenovo Accused '344 Instrumentalities constitute direct infringement of at least claims 2 and 6 of the '344 Patent.

77.     In particular, Lenovo's actions that aid and abet others such as its partners, customers/subscribers, clients, and end users to infringe include advertising and distributing the Lenovo Accused '344 Instrumentalities, and providing instruction materials, training and services regarding the Lenovo Accused '344 Instrumentalities.

78.     Any party, including Lenovo's partners, clients, customers/subscribers, and end users, using the Lenovo Accused '344 Instrumentalities necessarily infringes the '344 Patent because the inventions of the '344 Patent are required to comply with the relevant cellular standard. Lenovo advertises its Lenovo Accused '344 Instrumentalities as compliant with 5G, which induces others to infringe the '344 Patent. Lenovo has knowingly induced infringement since at least as early as the filing date of this Complaint.

79.     Upon information and belief, Lenovo is liable as a contributory infringer of the '344 Patent under 35 U.S.C. § 271(c) by offering to sell, selling and importing into the United States the Lenovo Accused '344 Instrumentalities that infringe the patented inventions, to be especially made or adapted for use in an infringement of the '344 Patent. Each of the Lenovo Accused '344

Instrumentalities is a material component for use in practicing the '344 Patent and is specifically made and not a staple article of commerce suitable for substantial non-infringing use. In particular, each of the Lenovo Accused '344 Instrumentalities is advertised to be compliant with the relevant standards and primarily used in compliance with such standards.

80.     Pantech Corp. has been harmed by Lenovo's infringing activities.

## COUNT IV – INFRINGEMENT OF U.S. PATENT NO. 12,267,876

81.     The allegations set forth in the foregoing paragraphs 1 through 80 are incorporated into this claim for relief.

82.     On April 1, 2025, the '876 Patent, entitled "Method for Transmitting and Receiving Random Access Request and Transmitting and Receiving Random Access Response," was duly and legally issued by the United States Patent and Trademark Office from U.S. Patent Application No. 18/371,735, filed on September 22, 2023. Through a series of continuation applications, the '876 Patent claims priority to KR 10-2008-0047656, filed May 22, 2008, U.S. Provisional App. No. 61/018,492, filed January 1, 2008. A true and correct copy of the '876 Patent is attached as Exhibit 4.

83.     Pantech is the assignee and owner of all right, title and interest in and to the '876 Patent, including the right to assert all causes of action arising under said patent and the right to any remedies for infringement of it.

84.     The '876 Patent's written description contains the same teachings of the '876 Patent's written description, and Pantech hereby incorporates the corresponding discussion at Count III. *Supra* ¶ 69.

85.     For example, claims 4-6 of the '876 Patent recite elements of random access procedures mandated by the LTE standard, including at least 3GPP TS 36.300, TS 36.321, TS and TS 36.331 release 8 and higher. *See* 3GPP 36.321 v8.5.0 at 12-13 (§ 5.1.1), 13, 14, 15 (§§ 5.1.3,

5.1.4) (the UE performs a random access procedure, including transmitting a RAP, monitoring for a RAR within a RA response window, and receives a RAR); 3GPP TS 36.300 v8.5.0 at 50 (§ 10.1.5.1) (the UE receives a RAR).

86.     Upon information and belief, Lenovo and/or its subsidiaries or business partners has and continues to directly infringe at least claims 4-6 of the '876 Patent by making, using, selling, importing, offering to sell within the United States, importing into the United States, and providing to and within the United States, Accused Instrumentalities that practice at least claims 4-6 of the '876 Patent (the "Lenovo Accused '876 Instrumentalities"). Lenovo also has and continues to directly infringe at least claims 4-6 by practicing claims 4-6 through the Lenovo Accused '876 Instrumentalities, and by causing the Lenovo Accused '876 Instrumentalities to practice the patented inventions.

87.     Lenovo Accused '876 Instrumentalities include, for example, the Motorola razr 50 smartphone and other products that are compatible with the LTE cellular communication standard, Release 8 or higher, and specifically with 3GPP TS 36.300, 3GPP TS 36.321, 3GPP TS 36.331, and/or 3GPP TS 36.213. On information and belief, each of the Lenovo Accused '344 Instrumentalities contains a chipset, application processor, SoC, or system-on-chip (e.g., Qualcomm Snapdragon 8 Elite Mobile Platform) (referred to herein as the "chipset") that incorporates a processor and modem. Each such chipset (and thus each accused device) complies with one or more of the LTE Release 8 or higher cellular communication protocols, including at least 3GPP TS 36.300, 3GPP TS 36.321, 3GPP TS 36.331, 3GPP TS 36.213, and/or 3GPP TS 36.331, and supports Radio Resource Control (RRC), random access, and timing advance mechanisms in accordance with the LTE Release 8 or higher cellular communication standards. Further, each of the Accused '344 Instrumentalities contains an antenna or antennas, memory, and

transceiver or combination of transmitter and receiver that assist the processor with the RRC, random access, and timing advance mechanisms in accordance with the LTE Release 8 or later cellular communication standards.

88.    Pantech made Lenovo aware of the '876 Patent family and its infringement thereof at least as early as June 12, 2020, when Pantech explicitly identified '876 Patent family members in correspondence sent to Lenovo.

89.    Since the issuance of the '876 Patent, Lenovo's infringement has been, and continues to be, willful based on at least the fact that Pantech made Lenovo aware of the '876 Patent's family members on June 12, 2020.

90.    Upon information and belief, the Lenovo Accused '876 Instrumentalities are used, marketed, provided to, and/or used by or for Lenovo's partners, clients, customers/subscribers and end users across the country and in this district.

91.    Upon information and belief, Lenovo has induced and continues to induce others to infringe at least claims 4-6 of the '876 Patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including, but not limited to Lenovo's subsidiaries, partners, clients, customers/subscribers, and end users, whose use of the Lenovo Accused '876 Instrumentalities constitutes direct infringement of at least one claim of the '876 Patent. For example, Lenovo advertises and has advertised the use of its devices for LTE communications. *See* https://www.Lenovo.com/en_us/Lenovo-razr 50/specs?sku=HQ502000461Q0.

92.    In particular, Lenovo's actions that aid and abet others such as its partners, customers/subscribers, clients, and end users to infringe include advertising and distributing the

Lenovo Accused '876 Instrumentalities, and providing instruction materials, training and services regarding the Lenovo Accused '876 Instrumentalities.

93.    Any party, including Lenovo's partners, clients, customers/subscribers, and end users, using the Lenovo Accused '876 Instrumentalities necessarily infringes the '876 Patent because the inventions of the '876 Patent are required to comply with the relevant cellular standard. Lenovo advertises its Lenovo Accused '876 Instrumentalities as compliant with LTE, which induces others to infringe the '876 Patent. Lenovo has knowingly induced infringement since at least as early as early as the filing date of this Complaint, when Lenovo was made aware of the '876 Patent.

94.    Upon information and belief, Lenovo is liable as a contributory infringer of the '876 Patent under 35 U.S.C. § 271(c) by offering to sell, selling and importing into the United States the Lenovo Accused '876 Instrumentalities that infringe the patented inventions, to be especially made or adapted for use in an infringement of the '876 Patent. Each of the Lenovo Accused '876 Instrumentalities is a material component for use in practicing the '876 Patent and is specifically made and not a staple article of commerce suitable for substantial non-infringing use. In particular, each of the Lenovo Accused '876 Instrumentalities is advertised to be compliant with the relevant standards and primarily used in compliance with such standards.

95.    Pantech Corp. has been harmed by Lenovo's infringing activities.

## COUNT IX – BREACH OF FRAND

96.    The allegations set forth in the foregoing paragraphs 1 through 95 are incorporated into this claim for relief.

97.    The European Telecommunications Standards Institute (ETSI) Rules of Procedure Annex 6 at Clause 3.2 states:

> IPR holders whether members of ETSI and their AFFILIATES or third parties, should be adequately and fairly rewarded for the use of their IPRs in the implementation of STANDARDS and TECHNICAL SPECIFICATIONS.

98.     Upon information and belief, Lenovo and/or its affiliates as defined by ETSI policy are signatories to ETSI and therefore subject to Annex 6 at Clause 3.2. This has been acknowledged by the Federal Circuit at *Telefonaktiebolaget LM Ericsson v. Lenovo (United States), Inc.*, 120 F.4th 864, 867 (Fed. Cir. 2024) ("Lenovo and Ericsson are both ETSI members"), and has been admitted by Lenovo's US affiliate in *Telefonaktiebolaget LM Ericsson v. Lenovo (US) Inc. et al.*, No. 5-23-cv-00569, Dkt. 3 at ¶ 200 (E.D.N.C. Dec. 14, 2023) ("Lenovo US admits that it [] has contractually committed to ETSI to be prepared to grant licenses to any such patents on FRAND terms and conditions to third parties, such as Ericsson and its affiliated companies, to the extent they implement equipment compliant with the standards, subject to reciprocity"). According to ETSI policy at Annex 6 at Clause 15, "References to a MEMBER shall wherever the context permits be interpreted as references to that MEMBER and its AFFILIATES" and "'AFFILIATE' of a first legal entity means any other legal entity: directly or indirectly owning or controlling the first legal entity; or under the same direct or indirect ownership or control as the first legal entity; or directly or indirectly owned or controlled by the first legal entity; for so long as such ownership or control lasts." Upon information and belief, Lenovo directly or indirectly owns or controls Lenovo (United States) Inc. or is under the same direct or indirect ownership or control as Lenovo (United States) Inc.

99.     Lenovo is and has been obligated to negotiate in good faith towards a patent license agreement for these patents on FRAND terms, which it has not done. Lenovo failed to negotiate in good faith and engaged in holdout behavior to extract unfair licensing terms.

100.    Pantech, which has complied with ETSI's intellectual property policy and has negotiated in good faith, has been harmed by Lenovo's breach of its FRAND obligations, wherein the damages include but are not limited to the attorney's fees and the cost of litigation it has thus far incurred and is incurring in its attempts to compel Lenovo to enter into a license on FRAND terms.

## COUNT X – UNJUST ENRICHMENT

101.    The allegations set forth in the foregoing paragraphs 1 through 100 are incorporated into this claim for relief.

102.    In negotiations with Pantech, Lenovo failed to negotiate in good faith and engaged in holdout behavior to extract unfair licensing terms. In so doing, Lenovo has been unjustly enriched, as it has continued to sell the accused products while invoking FRAND protections but has neither undertaken the expense of FRAND negotiations and investigation nor has it paid licensing royalties to adequately and fairly reward Pantech for the innovations of their SEP portfolio.

103.    In these circumstances, it would be inequitable for Lenovo to retain the benefits it has obtained. Pantech, which has complied with ETSI's intellectual property policy and has negotiated in good faith, has been harmed by Lenovo's failure to negotiate in good faith and holdout behavior.

## DAMAGES

As a result of Lenovo's acts of infringement and breach of FRAND obligations, Pantech has suffered actual damages. Furthermore, Lenovo has been unjustly enriched by its failure to enter into licensing terms with Pantech on FRAND terms. To the fullest extent permitted by law, Pantech seeks recovery of damages at least in the form of reasonable royalties, along with damages suffered

from Lenovo's breach of its FRAND obligations and restitution to compensate for Lenovo's unjust enrichment.

## NOTICE

Pantech Corp. complied with the notice requirement of 35 U.S.C. § 287 as they do not currently distribute, sell, offer for sale, or make products embodying the Asserted Patents which would require marking. In addition, Lenovo has had actual knowledge of the Asserted Patents and its infringement thereof at least as of receipt of the Pantech and/or Signal Trust notice letters identified in this Complaint.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Pantech demands a trial by jury on all issues triable as such.

## PRAYER FOR RELIEF

WHEREFORE, Pantech demands judgment for itself and against Lenovo as follows:

A.      An adjudication that Lenovo has infringed one or more claims of the Asserted Patents, literally and/or under the doctrine of equivalents;

B.      An adjudication that Lenovo has indirectly infringed one or more claims of the Asserted Patents, literally and/or under the doctrine of equivalents;

C.      An award of damages to be paid by Lenovo adequate to compensate Pantech for Lenovo's past infringement of the Asserted Patents, and any continuing or future infringement through the date such judgment is entered, including interest, costs, expenses and an accounting of all infringing acts including, but not limited to, those acts not presented at trial;

D.      A declaration that this case is exceptional under 35 U.S.C. § 285;

E.      An award of Pantech's reasonable attorneys' fees;

F.      A declaration that Lenovo's acts of infringement were willful;

G.      An award of enhanced damages against Lenovo pursuant to 35 U.S.C. § 284;

H.      A permanent injunction enjoining Lenovo, its officers, agents, servants, employees, and all persons in active concert or participation with them, from infringing, contributing to the infringement of, or inducing the infringement of the Asserted Patents.

I.      An adjudication that Lenovo has breached its FRAND obligations to Pantech;

J.      An award of damages to be paid by Lenovo adequate to compensate Pantech for damages suffered from its breach of FRAND obligations;

K.      An adjudication that Lenovo has been unjustly enriched;

L.      An award of restitution to compensate Pantech for Lenovo's unjust enrichment; and

M.      An award to Pantech of such further relief at law or in equity as the Court deems just and proper, including equitable relief which may be requested and to which Pantech is entitled.

Dated: July 3, 2025                              Respectfully submitted,

                                                 */s/ Geoffrey Culbertson*
                                                 Geoffrey Culbertson
                                                 Kelly Tidwell
                                                 PATTON TIDWELL & CULBERTSON, LLP
                                                 2800 Texas Blvd. (75503)
                                                 Post Office Box 5398
                                                 Texarkana, TX 75505-5398
                                                 (P) (903) 792-7080
                                                 (F) (903) 792-8233
                                                 gpc@texarkanalaw.com
                                                 kbt@texarkanalaw.com

                                                 James A. Fussell, III
                                                 Jamie B. Beaber
                                                 Tiffany A. Miller
                                                 Clark S. Bakewell
                                                 Courtney Krawice
                                                 MAYER BROWN LLP
                                                 1999 K Street, N.W.

Washington, D.C. 20006
(202) 263-3000
jbeaber@mayerbrown.com
jfussell@mayerbrown.com
tmiller@mayerbrown.com
cbakewell@mayerbrown.com
ckrawice@mayerbrown.com

Graham (Gray) M. Buccigross
MAYER BROWN LLP
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, CA 94306
(650) 331-2000
gbuccigross@mayerbrown.com

*Counsel for Plaintiff Pantech Corporation*